Filed 4/6/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re I.F. et al., Persons Coming Under the Juvenile Court Law. | H049207 (Santa Clara County Super. Ct. Nos. 19-JD-026208; 20-JD-026455) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, <br><br>    Plaintiff and Respondent, <br><br>    v. <br><br> K.F., <br><br>    Defendant and Appellant. | |

Mother K.F. appeals the juvenile court's jurisdiction and disposition orders pertaining to her children I.F. and B.F.  Her contentions on appeal relate solely to the findings that the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) does not apply to the dependency proceedings.  She argues evidence of her children's Native American ancestry triggered the duty under state law to further investigate whether her children come within the federal Act.  Because the Department of Family and Children's Services failed to comply with the statutory duty to further investigate whether the children are Indian children, mother contends the juvenile court's negative ICWA findings are based on insufficient evidence.

We argee with mother that the Department's initial investigation triggered the duty of further inquiry under state law, and will remand the matter to allow the Department and juvenile court to remedy the violation.

# I.  BACKGROUND

*I.F.'s Initial Petition*

In December 2019, the Santa Clara County Department of Family and Children's Services (the Department) filed a dependency petition under Welfare and Institutions Code section 300 (undesignated statutory references are to this code) on behalf of three-year-old I.F., alleging the child came within the jurisdiction of the juvenile court due to his mother's incarceration and substance abuse.  The social worker spoke with I.F.'s maternal grandparents when I.F. was in protective custody.  The grandfather reported that the maternal great-grandfather (his father) was from Minnesota and may have Native American ancestry.  (The maternal grandmother reported having no Native American ancestry.)  The social worker indicated on the initial hearing report that there was "reason to believe that [I.F.] is or may be an Indian child."

Mother filed an ICWA-020 Parental Notification of Indian Status form on which she checked the box stating she "may have Indian ancestry."  She told the court at the initial hearing that she "might" have Native American ancestry on her grandfather's side, but she was unaware of any tribal affiliation or membership.  The court found that ICWA "may apply."  The social worker who prepared the jurisdiction report wrote that ICWA "does or may apply," referring to the maternal grandfather's statement that "a maternal great grandfather may have Native American ancestry in Minnesota."

I.F. was returned to his mother's care in January 2020.  The following month the social worker wrote that I.F. should continue in mother's care and that ICWA did not apply.  In March 2020, the court sustained the allegations in the first amended petition and declared I.F. a dependent of the court.  No ICWA finding was made at that time.  I.F. remained in mother's care, with court-ordered family maintenance services.

*B.F.'s Initial Petition*

In May 2020, the Department filed a dependency petition on behalf of newborn B.F., due to mother's inability to care for and protect her.  Mother reported to a third

social worker that she may have Native American ancestry on her father's side. Mother had no information about that ancestry, and she related that any relatives with information had passed away. The initial hearing report for B.F. referred to the December 2019 interview with the maternal grandfather, and the social worker checked the box stating, "There is reason to believe [B.F.] is an Indian child based on information provided about the child's possible heritage, and further inquiry is required." (We note that the initial hearing report for B.F. also stated (incorrectly) that the court found ICWA did not apply to I.F. at I.F.'s February 14 disposition hearing; ICWA was not discussed on February 14, nor did the court's minutes address ICWA.)

At the initial hearing, the court found there was "reason to believe that [B.F.] is an Indian Child," and "further inquiry is required regarding ICWA." Shortly thereafter, mother told the social worker she had no additional information regarding her Native American ancestry.

The petition on behalf of B.F. was sustained and dismissed at the June 2020 jurisdiction hearing, with the understanding that mother would continue with family maintenance services in I.F.'s dependency action. No ICWA findings were made.

*New Allegations*

I.F. and B.F. were taken into protective custody in April 2021, and the Department filed new petitions on behalf of the children. The initial new hearing report for B.F. indicated "no reason to believe" B.F. is an Indian child. That report, prepared by a fourth social worker, did not document the December 2019 interview with the maternal grandfather. The social worker reported that mother had not been interviewed because she was incarcerated, and reported (again incorrectly) that the court had determined ICWA did not apply in the previous proceeding involving I.F. A fifth social worker prepared the new initial hearing report for I.F. She also failed to note the December 2019 interview with the maternal grandfather; reported incorrectly that the court had made an

3

earlier finding that ICWA did not apply to I.F.; and indicated "no reason to believe" I.F. is an Indian child.

At the initial hearing on the new allegations, the court asked mother whether she was aware of any Native American heritage or ancestry on her side of the family. Mother responded: "I think we've gone over this many times, and the thing is that I know we do, but we're not – I just don't have that information. That would have [come] from my grandfather or my grandmother, and I never got that from them." Mother elaborated that she understood from her paternal grandmother (who raised her and had passed away in March 2020) that her paternal grandfather had Native American ancestry. But her grandmother "just could not remember things to tell me when I asked her." Her grandfather had "moved away from his family"; his family was "out of state"; and she did not know where he was from. She did not know whether anyone in her family was enrolled in a tribe, or whether her children were eligible for enrollment in a tribe. She was not aware of any family member receiving medical care from a Native American health clinic or attending a Native American school. Neither she nor or her children had lived on a reservation or been involved with a tribal court. Mother's newly appointed attorney added, "She needs to do some further research with regard to that side of the family." When asked about any relatives on her paternal grandfather's side of the family whom the social worker could contact with additional questions, counsel stated that mother "is still trying to find who those people are, but if she does, she will give that contact information to the social worker. But the answer is no."

The maternal grandmother told the court that there was no Native American ancestry on her side of the family, and she was unaware of any Native American ancestry on the maternal grandfather's side of the family. The children's presumed father stated that his family was from Mexico and had no Native American ancestry.

The Department asked the court to find "no reason to believe the [children are] Indian [children] at this time." The deputy county counsel argued: "[A]t this point, all []

4

mother has made are very vague statements about possible ancestry with no identified tribes, no family members who had – would have no additional information and nothing to meet any of the criteria to show that there is either reason to know or reason to believe that the children are actually Indian children under the Indian Child Welfare Act." Counsel argued if "any new or additional information [is] provided that raises the level of assessment here to 'reason to believe' or 'reason to know,' then further inquiry would be required." The court agreed, and found no reason to believe the children are Indian children "based on all the facts that we have today." The court continued, "I think a little bit more investigation is in order, but I agree with you that there really hasn't been any basis for making a reason to believe finding today based on the information we have and that we've been trying to receive over the life of this case." The children were detained and continued in foster care.

In May 2021, the children's social workers contacted the maternal grandfather, who said his father, who was from Minnesota, told him the family had Native American ancestry, but had never mentioned a particular tribe. The maternal grandfather said his brother John may have information about their ancestry, and he agreed to speak with his brother and to provide his brother's phone number to B.F.'s social worker. The maternal grandfather related that he never lived on an Indian reservation, never attended an Indian school or clinic, did not have a tribal identification number, and did not know whether he or his children were eligible for enrollment in a Native American tribe. Following that interview, the Department recommended that the court find there "was reason to believe that [I.F.] is an Indian child;" the social worker had "conducted a diligent inquiry into [I.F.'s] possible Indian heritage, including contacting the possible tribes, the BIA, and CDSS;" there "is no reason to know [I.F.] is an Indian child"; there is "no reason to believe or know that [B.F.] is an Indian child"; and ICWA does not apply.

According to an addendum report, B.F.'s social worker followed up with the maternal grandfather, who did not provide his brother's phone number. The maternal

5

grandfather reported he contacted his brother "for other issues," but he did not ask for his brother's phone number, and he would not reach out to his brother about the family's Native American ancestry because I.F. and B.F. were not his brother's grandchildren.

At the jurisdiction and disposition hearing in June 2021, the court sustained amended petitions as to both children. B.F. was declared a dependent child of the court; I.F. was continued as a dependent child of the court; the children remained in a foster placement; and family reunification services were ordered. The court adopted the ICWA findings recommended by the Department: The court found there was a reason to believe I.F. is an Indian child; the social worker "conducted a diligent inquiry into [I.F.'s] possible Indian heritage, including contacting the possible tribes, the BIA, and CDSS"; there is "no reason to know [I.F.] is an Indian child"; "no reason to believe or know that [B.F.] is an Indian child"; and ICWA did not apply to the hearing.

## II. DISCUSSION

ICWA was enacted "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families" by assuring that Indian children who are removed from their families are placed in foster or adoptive homes reflecting the unique values of Indian culture. (25 U.S.C. § 1902.) Under ICWA, an Indian child's tribe has a right to intervene in or exercise jurisdiction over a dependency proceeding involving the Indian child. (*Id*., §§ 1911(b)–(c), 1912(a).) To that end, ICWA requires that appropriate tribes be notified of a state court dependency action which may result in termination of parental rights or a child's placement in foster care when the state court "knows, or has reason to know" the proceeding involves an Indian child. (*Id*., § 1912(a); § 224.3, subd. (a) [same].)[1]

---

[1] ICWA defines an Indian child as an unmarried person under age 18 who is either "a member of an Indian tribe" or "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) An Indian tribe is defined as "any Indian tribe, band, nation, or other organized group or community of

(*Continued*)

6

The Bureau of Indian Affairs (BIA) promulgated regulations in 2016 to promote ICWA's uniform application in state courts. The regulations require state courts to inquire of each participant in a dependency proceeding whether the participant "knows or has reason to know that the child is an Indian child" (25 C.F.R. § 23.107(a)) and identify circumstances establishing "reason to know." (*Id.*, § 23.107(c)(1)–(6).)[2]

The California Legislature adopted as state law the BIA's initial inquiry mandate and circumstances establishing "reason to know." (§ 224.2, subd. (c), (d)(1)–(6).) In addition, the Legislature independently imposed on dependency courts and county social services agencies the "affirmative and continuing duty to inquire whether a child … is or may be an Indian child." (§ 224.2, subd. (a).) When a child is placed in the temporary custody of a social services agency, state law requires a social worker to inquire of "the child, parents, legal guardians, Indian custodian, extended family members, and others who have an interest in the child" whether the child "is, or may be, an Indian child." (§ 224.2, subd. (b).)

State law also imposes on the dependency court and social worker a duty to make "further inquiry" regarding the possible Indian status of a child if there is "reason to

Indians recognized … by the Secretary [of the Interior]." (*Id.*, § 1903(8).) "[A] child may qualify as an Indian child within the meaning of the ICWA even if neither of the child's parents is enrolled in the tribe." (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254.)

[2] Those circumstances are set forth in the federal regulation: (1) the court is informed by a participant in the proceeding, court officer, Indian Tribe, Indian organization, or agency that the child is an Indian child; (2) the court is informed by a participant in the proceeding, court officer, Indian Tribe, Indian organization, or agency "that it has discovered information indicating that the child is an Indian child"; (3) the child gives the court reason to know he or she is an Indian child; (4) the court is informed that the child, the child's parents, or Indian custodian resides or is domiciled on a reservation or in an Alaska Native village; (5) the court is informed that the child is or has been a ward of a Tribal court; (6) the court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian Tribe. (25 C.F.R. § 23.107(c)(1)–(6).)

believe that an Indian child is involved in a [dependency] proceeding." (§ 224.2, subd. (e).) Further inquiry requires interviews to collect biographical data regarding the known names of the child's biological parents, grandparents, and great-grandparents, "including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known"; contacting the Bureau of Indian Affairs and the State Department of Social Services to assist in identifying tribes in which the child or parent may be a member; and contacting tribes and persons who may reasonably be expected to have information regarding the child's tribal membership, citizenship status, or eligibility. (§§ 224.2, subd. (e)(2)(A)–(C), 224.3, subd. (a)(5).)

Formerly, the duty of further inquiry under California law was coextensive with the duty of notice—both were triggered by a "reason to know the child is an Indian child." (Former § 224.3, subds. (b)–(d).) Early ICWA Guidelines urged state courts to verify a child's Indian status with the Bureau of Indian Affairs or the child's tribe when the state court had "reason to believe a child involved in a child custody proceeding is an Indian." (Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584, 67586 (Nov. 26, 1979).) Circumstances demonstrating a "reason to believe" included "information which suggests that the child is an Indian child." (*Ibid*.) California adopted its former "reason to believe" threshold as a basis for providing a "reason to know the child is an Indian child" (former § 224.3, subd. (b)(1)), which in turn triggered the duty to further inquire and the duty to provide notice. (Former § 224.3, subds. (c), (d).) California conformed its definition of "reason to know" a child is an Indian child to the Bureau of Indian Affairs' 2016 regulations. (§ 224.2, subd. (d)(1)–(6); 25 C.F.R. § 23.107(c)(1)–(6).) The Legislature maintained the "reason to believe" standard in new section 224.2 as a benchmark for further inquiry into a child's possible Indian status to assist in making the "reason to know" determination. (§ 224.2, subd (e).)

8

In 2020, section 224.2 was amended to articulate when the "reason to believe" standard is met. (Stats. 2020, ch. 104 (A.B. 2944), § 15, eff. Sept. 18, 2020.) Harkening to the early ICWA Guidelines, the "reason to believe" standard is met "whenever the court [or] social worker [] has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) "[I]nformation suggesting membership or eligibility for membership" includes "information that indicates, but does not establish, the existence of one or more of the grounds for reason to know." (*Ibid.*) California Rules of Court, rule 5.481(a)(4) also mandates further inquiry if a social worker "knows or has reason to know or believe that an Indian child is or may be involved" in a dependency proceeding.

We review the juvenile court's ICWA findings for substantial evidence. (*In re D.F.* (2020) 55 Cal.App.5th 558, 565.) Where the facts are undisputed, we independently review whether ICWA's requirements have been satisfied. (*Ibid.*) "[W]here the issue on appeal turns on the failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

*The Social Worker's Initial Inquiry Established a Reason to Believe I.F. and B.F. are Indian Children*

Mother challenges the finding in the June 2021 jurisdiction and dispositional orders that ICWA does not apply to the dependency proceedings. She argues that the information she and her father provided to the Department regarding her Native American ancestry provided "a reason to believe" I.F. and B.F. are Indian children, thereby triggering the duty of further inquiry under section 224.2, subdivision (e), which the Department failed to undertake. She asserts the finding that ICWA did not apply to the proceedings was thus based on insufficient information. (We note mother does not challenge the ICWA findings as they relate to the children's paternity.)

9

As amended in 2020, section 224.2, subdivision (e)(1) specifies that "[t]here is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) Courts have broadly construed the reason to believe standard. (*In re Benjamin M*. (2021) 70 Cal.App.5th 735, 744 [" 'Reason to believe' is broadly defined as 'information *suggesting* that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe' "]; *In re S.R.* (2021) 64 Cal.App.5th 303, 316 [new subdivision (e) "forecloses [a] narrow interpretation of what constitutes reason to believe"].) Its broad application is essential to the remedial purpose of the affirmative and ongoing duty to inquire under California law. (*In re T.G.* (2020) 58 Cal.App.5th 275, 295, review denied (March 24, 2021).) "Synonyms for the term [']suggest['] include 'imply,' 'hint,' 'intimate' and 'insinuate.' " (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 255, 258 [referring to the phrase "information which *suggests* that the child is an Indian child" in ICWA Guidelines].)

The duty of further inquiry existed in *In re T.G.* where the mother believed she had Cherokee ancestry through her mother and possible Native American ancestry through her paternal grandfather. (*In re T.G.*, *supra*, 58 Cal.App.5th at pp. 280, 283.) The appellate court rejected as "fundamentally at odds with well-established ICWA law" the argument that a " 'mere possibility of Indian ancestry' " does not trigger the need for further inquiry, citing *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 65, fn. 21 (an Indian tribe is the final arbiter of its membership rights) and section 224.2, subdivision (h) (" 'Information that the child is not enrolled, or is not eligible for enrollment in, the tribe is not determinative of the child's membership status unless the tribe also confirms in writing that enrollment is a prerequisite for membership under tribal law or custom' "). (*In re T.G.*, at p. 294.) Broadly applying the reason to believe standard, the court in *In re D.F.* found that a mother's statement "that she may have

Indian heritage from a tribe in New Mexico" was sufficient to trigger further inquiry. (*In re D.F., supra,* 55 Cal.App.5th at p. 569.)

The court in *In re T.G.* observed: "[T]he imposition of a duty to inquire that is significantly more expansive than the duty to provide ICWA notice is premised on the common sense understanding that, over time, Indian families, particularly those living in major urban centers like Los Angeles, may well have lost the ability to convey accurate information regarding their tribal status. [Footnote omitted.] As a result, the information available at the outset of dependency proceedings will often be inadequate to ensure the necessary protection of the rights and cultural heritage of Indian children, Indian families, and Indian tribes. [Citation.] General information from the family about its ancestry frequently provides the only available basis to believe an Indian child may be involved." (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 295; accord, *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 743 ["in any case where information about Indian ancestry is unknown, the probability of such ancestry is reason[] enough to require the agency and court to pursue it"].)

We agree with those observations, and we conclude as a matter of law that mother's statements that she had been told by her paternal grandmother that she had Native American ancestry through her paternal grandfather, coupled with the maternal grandfather's statements that his father told him the family had Native American ancestry in Minnesota, established a reason to believe I.F. and B.F. are Indian children and thus triggered the duty of further inquiry under California law.[3]

---

[3] However we reject mother's argument that the Department failed in its initial duty of inquiry under section 224.2, subdivision (b) by not asking " 'extended family members' " and " 'others who have an interest in the [children]' " whether I.F. and B.F. may be Indian children. Social workers interviewed mother, the maternal grandmother, and the maternal grandfather regarding the children's Native American ancestry through the maternal grandfather. (25 U.S.C. § 1903(2); § 224.1, subd. (c) [extended family members include the child's "grandparent, aunt or uncle, [adult] brother or sister, brother-

(*Continued*)

*The Duty to Inquire Further is not Satisfied by an Ongoing Initial Inquiry*

Early in the dependency proceedings, it was the Department's position that there was a reason to believe I.F. and B.F. are Indian children. In the social worker's May 2021 report, the Department asked the court to find the social worker had conducted a diligent further inquiry into I.F.'s possible Indian heritage which resulted in no reason to know I.F. is an Indian child. Those findings were adopted by the juvenile court.

On appeal, the Department takes the conflicting position that the duty of further inquiry was never triggered. The Department now views its entire inquiry, which began in December 2019 and concluded in June 2021, as coming within (and satisfying) its initial duty of inquiry under subdivision (b). It contends substantial evidence supports the juvenile court's finding that ICWA does not apply because "the vague information provided by family" did not create a reason to believe either child is an Indian child, even under the low quantum of proof found sufficient in *In re D.F.*, *supra*, 55 Cal.App.5th at p. 569. But the Department provides an incomplete description of the social workers' investigation here. The Department focuses in its briefing on mother's and the maternal grandfather's limited knowledge of their ancestry without any mention that the maternal grandfather connected his Native American ancestry to Minnesota. As we have explained, that information is sufficient to trigger the duty to inquire further.

The Department argues there is no reason to believe the children are Indian children in part because there is "no evidence that anyone in the family has ever been enrolled in a tribe, held a tribal membership identification card, lived on a reservation, received services from an Indian health clinic, attended an Indian school, or been involved with a tribal court." But while any of those circumstances may provide a

in-law or sister-in-law, niece or nephew, first or cousin, or stepparent"].) Mother does not identify others who should have been but were not initially interviewed, nor how she was prejudiced by an initial inquiry that gave rise to the duty to inquire further.

12

"reason to *know*" a child is an Indian child (§ 224.2, subd. (d)(1)–(6); 25 C.F.R. § 23.107(c)(1)–(6)), they do not inform the threshold determination of whether there is a "reason to *believe*" the children are Indian children.

The duty of further inquiry was triggered when the social worker had reason to believe I.F. was an Indian child. Once triggered, the statutory scheme does not contemplate that continued inquiry under subdivision (b) would negate reason to believe. (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742 ["If the initial inquiry gives the juvenile court or the agency 'reason to believe' that an Indian child is involved, then the juvenile court and the agency have a duty to conduct 'further inquiry' "].) California law requires that further inquiry be undertaken by the social worker (§ 224.2, subd. (e)), and only after that further inquiry has concluded may the court find that ICWA does not apply to the proceedings. (§ 224.2, subd. (i)(2) ["If the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings"].) The proper focus is therefore not on a continuing initial inquiry under subdivision (b), as the Department urges, but on the adequacy and results of further inquiry under subdivision (e), which the Department concedes did not occur here.

*Further Inquiry Would Not be Futile*

The Department argues that further inquiry would be futile, and specifically that contacting the Bureau of Indian Affairs or the State Department of Social Services would be an idle act, relying on *In re J.S.* (2021) 62 Cal.App.5th 678, 689 (without "the identity of a tribe, let alone a federally recognized one, or at least a specific geographic area of possible ancestry origin, the BIA could not [be expected to assist] the Department in identifying the tribal agent for any relevant federally recognized tribes"). But this is not a case where, "considering the entire record, it [is] obvious that additional information would not have been meaningful to the inquiry." (*In re Benjamin M.*, *supra*,

13

70 Cal.App.5th at p. 743.) A specific geographic area of ancestry was identified by the maternal grandfather—the state of Minnesota—where there is a finite number of federally recognized Indian tribes. (See https://www.bia.gov/service/tribal-leaders-directory/federally-recognized-tribes [as of April 6, 2022], archived at <https://perma.cc/5MZ3-GPCR>.) It would not be futile to contact the Bureau of Indian Affairs or the tribes themselves to seek assistance regarding the children's possible tribal membership, citizenship status, or eligibility. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 570 [contacting 21 tribes in New Mexico and nine tribes in New York to further inquire].) "Additional investigation may not develop further information establishing the need for ICWA notice, but it is essential to the enforcement of the court's and [Department's] 'affirmative and continuing duty to inquire.' " (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 295.) On remand, the Department must diligently gather the biographical information related to the maternal great-grandfather and provide that information to the Bureau of Indian Affairs and the federally recognized tribes in Minnesota. (§§ 224.2, subd. (e)(2)(A)–(C); 224.3 (a)(5).)[4]

### III.    DISPOSITION

The juvenile court's findings that ICWA does not apply are vacated. The matter is remanded to the juvenile court for the Department to conduct further inquiry as required by Welfare and Institutions Code section 224.2, subdivision (e), and California Rules of Court, rule 5.481(a)(4). The juvenile court must determine whether further inquiry has been adequately and diligently conducted (§ 224.2, subd. (i)(2)), and make a finding under California Rules of Court, rule 5.481(b)(3)(A)–(C). If the juvenile court thereafter

---

[4] There is no record of the social worker asking the maternal grandfather for his father's biographical information under section 224.3, subdivision (a)(5). Indeed, it is unclear on this record whether the maternal great-grandfather is living or deceased. The social worker's June 6, 2020 ICWA notice incorrectly states that the maternal grandfather is deceased, and no information is provided regarding the maternal great-grandfather.

finds that ICWA does not apply, the inapplicability findings shall be reinstated. If the juvenile court finds that ICWA applies, notice of the dependency proceedings shall be sent to the relevant tribal entities consistent with federal and state law, and California Rules of Court, rule 5.481(c). If, after proper notice, no response is received from a tribe indicating that I.F. and B.F. are Indian children, the inapplicability findings shall be reinstated. If a tribe determines that I.F. and B.F. are Indian children, the juvenile court shall proceed in conformity with ICWA, and I.F., B.F., mother, and the tribe may petition the court to invalidate any orders that violate ICWA. (See 25 U.S.C. § 1914.) In all other respects, the June 17, 2021 jurisdiction and disposition orders are affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Elia, J.

H049207 - *In re I.F. et al.; Santa Clara County DFCS v. K.F.*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court Nos. 19-JD-026208,<br>20-JD-026455 |
| Trial Judge: | Hon. Frederick S. Chung |
| Counsel for Plaintiff/Respondent:<br>Santa Clara County Department of<br>Family and Children's Services | James R. Williams, County Counsel<br>Braeden L. Sullivan, Deputy County Counsel<br>Office of the County Counsel<br>County of Santa Clara |
| Counsel for Minors:<br>I.F. and B.F. | No appearance for Minor |
| Counsel for Defendant/Appellant:<br>K.F. | Under appointment by the Court of Appeal<br>Elizabeth Klippi |